IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Armando Despaigne Zulveta, ) | Civil Action No. 6:15-2880-HMH-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| State Automobile Mutual Insurance, ) | |
| Company; Philpot Law Firm, PA; ) | |
| TC Unlimited, Inc.; Steadman Hawkins ) | |
| Clinic of the Carolinas; Wilson, Jones, ) | |
| Carter, & Baxley, PA; Robert P. ) | |
| Restrepo, Jr.; Stephen R. Bruner; ) | |
| Irvin H Philpot, III; Tim Case; ) | |
| Curtis Elliott; and Wesley J. Shull; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on the defendants' motions to dismiss (docs. 12, 17, 22, 28) and the plaintiff's motion to amend complaint (doc. 67). This is a civil action filed by a *pro se* litigant. Under Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the undersigned United States Magistrate Judge.

Defendants Wesley J. Shull and Willson Jones Carter & Baxley, PA (collectively, "the Willson Jones defendants") filed a motion to dismiss on August 27, 2015 (doc. 12). On August 28th, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 15). On September 2nd, defendants Irvin H. Philpot, III, and the Philpot Law Firm, PA (collectively, "the Philpot defendants") filed a motion to dismiss (doc. 17), and another *Roseboro* order was issued on September 3rd (doc. 18). On September 9th, defendants Curtis Elliot and Steadman Hawkins Clinic of the Carolinas (collectively "the Steadman Hawkins defendants") filed a motion to dismiss (doc. 22). Another *Roseboro* order was issued on September 10th (doc. 26). On September 14th, defendants Stephen R. Bruner, Robert P. Restrepo, Jr., and State Automobile Mutual

Insurance Company (collectively "the State Auto defendants") filed a motion to dismiss (doc. 28). A *Roseboro* order was issued on September 15th (doc. 32). On October 2nd, the plaintiff filed his response in opposition to the Willson Jones defendants' motion to dismiss (doc. 42), and on October 5th, he filed his response in opposition to the Philpot defendants' motion to dismiss (doc. 42). On October 8th, the plaintiff filed a response in opposition to the State Auto defendants' motion to dismiss (doc. 52). On October 14th, the plaintiff filed a response in opposition to the Steadman Hawkins defendants' motion to dismiss (doc. 61), and on October 19th, the plaintiff filed a motion to amend his complaint (doc. 67). On October 21st, the undersigned recommended that the motion for leave to file a late answer or otherwise plead (doc. 21) of defendants Tim Case and TC Unlimited, Inc. ("the Case defendants") be granted and the plaintiff's motions for default (docs. 35, 49) be denied. On October 22nd, the Case defendants filed opposition to the plaintiff's motion to amend (doc. 74).

On November 17th, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, granted the Case defendants' motion for leave to file a late answer or otherwise plead (doc. 21) and denied the plaintiff's motions for default (docs. 35, 49, 71). The undersigned thereafter directed the Case defendants to file their answer or otherwise plead by November 24th, and the Case defendants filed an answer on November 23rd.

## FACTS PRESENTED

This case arises out of an alleged on-the-job injury sustained by the plaintiff on November 11, 2014. The plaintiff filed a claim with the South Carolina Workers' Compensation Commission ("the Commission") bearing case number WCC# 1416780. This case is still pending before the Commission, and a hearing to determine if the plaintiff is entitled to workers' compensation benefits was scheduled for September 1, 2015 (*see* doc. 12-2, hearing notice). The Philpot defendants note in their motion to dismiss that the plaintiff asked for and received a continuance of the hearing set for September 1st (*see* doc. 17-1

2

at 1 & doc. 17-2).[1] The plaintiff alleges, essentially, that the various defendants have conspired to prevent him from obtaining a favorable settlement of his claim (doc. 1 at 4-18). The specific allegations against each defendant are set forth below.

### Willson Jones Defendants

Defendant Willson Jones Carter & Baxley, P.A. ("Willson Jones") is a law firm with its primary office located in Greenville County, South Carolina. Defendant Wesley J. Shull is an attorney who practices with Willson Jones, primarily representing insurance carriers and employers in workers' compensation matters. The plaintiff makes no allegations towards Willson Jones, specifically, and the only allegations against Mr. Shull are that, while representing the opposing parties in the plaintiff's underlying workers' compensation action (namely, the Case defendants and the workers' compensation insurance carrier, defendant State Automobile Insurance Company ("State Auto")), he signed certain settlement proposals and/or documents filed with the Commission and generally participated in settlement negotiations with the plaintiff and the plaintiff's attorney (doc. 1 at 8-10,13).

### Philpot Defendants

Defendant Philpot Law Firm, P.A. is a law firm in Greenville County, South Carolina. Defendant Irvin H. Philpot, III, an attorney at the firm, represented the plaintiff in his workers' compensation claim at issue here. The plaintiff alleges that Mr. Philpot, in conjunction with some of the other defendants, conspired to keep him from receiving an appropriate settlement of his claim. He also alleges Mr. Philpot was not responsive to certain requests he made regarding a second medical opinion after the initial doctor determined he had a 0% disability (doc. 1 at 7) and for his employer having withheld

---

[1]In response to the Willson Jones defendants' motion to dismiss, the plaintiff submitted a transcript of the pre-hearing conference held before Commissioner T. Scott Beck on September 1, 2015 (doc. 40-15). Commissioner Beck granted the plaintiff's request for 30 days to obtain counsel and stated that the matter would be reset with 30 days' notice and no further postponements for the purpose of retaining legal counsel (*id.* at 19).

paychecks (*id.* at 10). He also criticizes Mr. Philpot for acknowledging defendant Shull in emails as his friend (*id.* at 11) and for allegedly filing improper paperwork with the Commission when Mr. Philpot was withdrawing as counsel after the plaintiff had terminated Mr. Philpot as his attorney (*id.*). Additionally, while the plaintiff acknowledges Mr. Philpot would have received his fee based on the plaintiff's settlement amount, the plaintiff alleges that Mr. Philpot "most likely than not" received money from defendant State Auto "under the table" in order to somehow harm the plaintiff's claim (*id.* at 13).

***Steadman Hawkins Defendants***

The plaintiff alleges that he injured his knee at work on November 11, 2014, and in an effort to treat his injury, defendant Case took him to Steadman Hawkins. Apparently, the plaintiff was not seen by anyone at Steadman Hawkins on November 11, 2014. The plaintiff alleges that he had an appointment at Steadman Hawkins on November 12, 2014, but the appointment was cancelled because defendant State Auto failed to approve payment and provide the appropriate paperwork (doc. 1 at 4). The plaintiff alleges that more than a month went by before he was seen by defendant Dr. Curtis Elliott on December 17, 2014. The plaintiff alleges that Dr. Elliott ignored his symptoms and at least initially refused to prescribe him any medication or document any work restriction for him. The plaintiff alleges that he was seen again by Dr. Elliott on January 14, 2015, and he alleges that Dr. Elliott ignored the issues the plaintiff alleges he was having with his knee, though the plaintiff does state that Dr. Elliott ordered an MRI. The plaintiff alleges that he saw Dr. Elliott one last time on January 28, 2015. During that appointment, they discussed the results of the plaintiff's MRI, which allegedly revealed that there was a piece of metal stuck in the plaintiff's knee. The plaintiff alleges that Dr. Elliott knew about the piece of metal from the beginning, but had refused to tell the plaintiff about it. Finally, the plaintiff alleges that Dr. Elliott signed a physician statement form on February 4, 2015, indicating that the plaintiff had sustained a 0% loss of use to lower extremity and was fit to return to work without restriction. The plaintiff alleges that Dr. Elliott signed the form to make the plaintiff vulnerable to economic sanctions, though it is not clear to what economic sanctions

4

the plaintiff is referring.  The plaintiff further alleges that Dr. Elliott executed a subsequent statement that the plaintiff claims contradicts the February 4, 2015, statement (*id.* at 4-5).

**State Auto Defendants**

As noted above, defendant State Auto is the workers' compensation insurance carrier for the plaintiff's employer.  The plaintiff alleges State Auto's role in the alleged conspiracy is in employing its claims adjuster, defendant Stephen R. Bruner, and in retaining Mr. Shull to defend the workers' compensation case. The plaintiff claims Mr. Bruner, along with Mr. Shull and Mr. Philpot, pressured him to take an unfair settlement of his workers' compensation claim and "intentionally for several weeks" withheld the plaintiff's last two paychecks  (doc. 1 at 9-10).  The plaintiff makes no specific factual allegations against defendant Robert P. Restrepo, Jr., whom the plaintiff states is the Chairman of State Auto and is therefore the "major responsible for this fraudulent scheme" (*id.* at 12).

**Case Defendants**

Defendant Tim Case is the owner and registered agent of defendant TC Unlimited, Inc., a landscaping company that employed the plaintiff. The plaintiff alleges that he hurt his knee at work on November 11, 2014, and when he returned to work in December, defendant Mr. Case refused to let him work on light duty work restriction (doc. 1 at 4).  He further claims that he reported back to work on January 29, 2015, and was told by Mr. Case to come back the next day because work was slow (*id.* at 5).  The plaintiff returned on January 30th, but again was told that work was slow and to go home.  The plaintiff claims that Mr. Case told him on February 2nd, that there was no work because it was raining, and on February 3rd, Mr. Case told the plaintiff that he was laid off because work was slow (*id.*).  The plaintiff alleges that Mr. Case "with his retaliatory action not only ensured Plaintiff would not receive worker compensation benefits (convenient for him) but also, working wage is stopped from being earned by plaintiff" (*id.* at 6; *see also id.* at 13 ("Employer Tim Case is part of this fraudulent scheme with his lay off action TC Unlimited

Inc. deprived Plaintiff from having access to workers compensation benefits and also benefitted himself.")).

***Causes of Action and Relief Sought***

The plaintiff alleges the following causes of action:  conspiracy, conspiracy to commit fraud, conspiracy to unjust enrichment, breach of fiduciary duties, infliction of emotional distress, medical malpractice, negligence, and retaliation (doc. 1 at 14-17).  As relief, the plaintiff seeks payment for medical bills totaling $2,700; repayment of a debt owed to a third-party of $7,050; payment of wages for an unspecified period; the "elimination of debt" totaling $2,500; treble damages; and punitive damages (*id.* at 17-18). He also seeks injunctive relief:  "(a)  to require all of the Defendants to cease any and all association, business with South Carolina Workers Compensation Commission and said Commission in other states, (b)  to require all of the Defendants and all of their offices and branches turn over any and all information relating to legal malpractice, fraud, breach of duty, and other criminal, civil, and/or administrative violations to the appropriate bar associations and to local state and federal law enforcement agencies" (*id.* at 18).

## APPLICABLE LAW AND ANALYSIS

***Defendants' Motions to Dismiss***

### 1.  Subject Matter Jurisdiction

The defendants first argue that the plaintiff's complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). It is well settled that federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute, *Willy v. Coastal Corp.*, 503 U.S. 131, 136–37 (1992). It is to be presumed that a cause lies outside this limited jurisdiction, *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11  (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936). The two most commonly recognized and utilized bases for federal

court jurisdiction are (1) "federal question," 28 U.S.C. § 1331, and (2) "diversity of citizenship." 28 U.S.C. § 1332. The federal question statute provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. *Id.* § 1331. The diversity statute requires complete diversity of parties (meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant) and an amount in controversy in excess of $75,000.00. *Id.* § 1332.

        In his complaint, the plaintiff does not expressly plead the basis on which he alleges this court has subject matter jurisdiction. Federal Rule of Civil Procedure 8(a)(1) requires that a complaint provide "a short plain statement of the grounds upon which the court's jurisdiction depends[.]" If, however, the complaint does not contain "an affirmative pleading of a jurisdictional basis, the federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 199) (citing 2 Moore's Federal Practice § 8.03 [3] (3d ed.1997)).

        With regard to federal question jurisdiction, the plaintiff alleges only claims that, if viable, would arise under South Carolina law (conspiracy, conspiracy to commit fraud, conspiracy to unjust enrichment, breach of fiduciary duties, infliction of emotional distress, medical malpractice, negligence, and retaliation). Accordingly, the complaint does not state any claims arising under the Constitution, laws, or treaties of the United States, and federal question jurisdiction is absent. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). A civil action for a plaintiff's state law claims may be filed in a federal court under the diversity statute if that statute's requirements are satisfied. The plaintiff's allegations that he is a citizen of North Carolina and the defendants are citizens of other states satisfies the

complete diversity requirement (doc. 1 at 2-3).  However, the defendants contend that he has not satisfied the amount in controversy requirement for diversity jurisdiction.

As set forth above, the plaintiff seeks payment for medical bills totaling $2,700, repayment of a debt owed to a third-party of $7,050, payment of wages for an unspecified period, the "elimination of debt" totaling $2,500, treble damages, and punitive damages (doc. 1 at 17-18).   The defendants argue that the plaintiff cannot meet the $75,000 threshold because the total of his special damages is only $12,250; thus, even if he was awarded treble damages, trebling the $12,250 in special damages would still only result in $36,750.00.  Further, they argue that even if the plaintiff received a punitive award of five times his special damages, the total amount would still be below the threshold (*see* doc. 12-1 at 9 n. 2).

The "sum claimed by the plaintiff controls" the amount in controversy determination. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *Id.* at 289.  The defendants must show "the legal impossibility of recovery" to be "so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir.1981) (internal quotation omitted). "[W]here the plaintiff makes his claim in obvious good faith, it is sufficient for jurisdictional purposes; and this is so even where it is apparent on the face of the claim that the defendant has a valid defense.*"* *McDonald v. Patton*, 240 F.2d 424, 425 (4th Cir. 1957).  Here, as set forth above, in addition to the $12,250 in damages, the plaintiff also seeks payment of lost wages for an unspecified period, treble damages, and punitive damages.  Punitive damages must be considered in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages, *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943), which the

8

defendants here have not argued. Viewing the allegations of the complaint, the court cannot say to a legal certainty that the plaintiff is precluded from recovering the jurisdictional amount. *See Thompson v. Victoria Fire & Cas. Ins. Co.*, 32 F.Supp.2d 847, 849 (D.S.C.1999) (holding the amount in controversy exceeds $75,000.00 where complaint sought consequential damages, punitive damages, and attorneys' fees and costs beyond the $25,000.00 in actual damages claimed).

## 2.  *Rooker-Feldman* Doctrine

The defendants further argue that the plaintiff's case is barred by the *Rooker-Feldman* doctrine, which  prevents dissatisfied state litigants from attempting to re-litigate unsuccessful state claims in federal courts and requires dismissal of any attempts to do so. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476–82 (1983) (a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (same).  The doctrine provides that "lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with the superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997).  Here, however, the state court case is still pending before the Commission.  Accordingly, the *Rooker-Feldman* doctrine is inapplicable.  *See Exxon Mobil Corp. v. Saudi Basic Industries Corp*. 544 U.S. 280, 292 (2005).

## 3.  South Carolina Workers' Compensation Act Exclusivity Provision

The Willson Jones defendants and the State Auto defendants also argue (doc. 12-1 at 11; doc. 28-1 at 4) that this case should be dismissed based on the exclusivity provision of the South Carolina Workers' Compensation Act, which provides, in pertinent part:

> The rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death. . . .

S.C. Code Ann. § 42-1-540.  "The Workers' Compensation Act is the exclusive remedy against an employer for an employee's work-related accident or injury." *Edens v. Bellini*, 597 S.E.2d 863, 867 (S.C. Ct. App. 2004) (citation omitted). "The exclusivity provision of the Act precludes an employee from maintaining a tort action against an employer where the employee sustains a work-related injury." *Id.* (citation omitted).  "A workers' compensation insurance carrier enjoys the employer's immunity under the Act except when the carrier stands in the position of a third party unrelated to its function as compensation carrier." *Ancrum v. United States Fidelity & Guaranty Co.*, 389 S.E.2d 645, 646 (S.C. 1989). Accordingly, the exclusivity provision only applies, if at all, to the claims against State Auto, which is the workers' compensation insurance carrier for the plaintiff's employer, and TC Unlimited, Inc., the plaintiff's employer.

An injury that is not accidental but rather results from the intentional act of the employer or its alter ego is an exception to the exclusivity provision. *Cason v. Duke Energy Corp.*, 560 S.E.2d 891, 893 n. 2 (S.C. 2002).  The alter ego exception applies only to "'dominant corporate owners and officers.'" *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700 (1993) (quoting 2A Larson, *Workmen's Compensation*, §§ 68.21 and 68.22).  Here, the plaintiff has made allegations of intentional torts that "could be construed under the notice pleading utilized in federal court to allege that an alter ego of the defendant engaged in the acts of which the plaintiff complains."  *Palmer v. House of Blues Myrtle Beach Restaurant Corp.*, C.A. No. 4:05-3301-RBH, 2006 WL 2708278, at *3 (D.S.C. Sept. 20, 2006). Accordingly, dismissal on this basis should be denied at this time.

Based upon the foregoing, the undersigned recommends that the district court consider the defendants' alternative arguments for dismissal for failure to state a claim upon which relief may be granted.

## 4. Failure to State a Claim

Alternatively, the defendants argue the plaintiff's complaint fails to state a cause of action for which relief may be granted. The undersigned agrees and recommends that the plaintiff's complaint be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. *See Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012). Rule 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss for failure to state a claim, the complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). The court must liberally construe *pro se* complaints to allow the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), and such *pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978).

### a. Conspiracy

The plaintiff has alleged causes of action for conspiracy, "conspiracy to commit fraud," and "conspiracy to unjust enrichment" against all of the defendants (doc. 1 at 14-15).  The court is unaware of any valid cause of action for conspiracy to commit fraud and/or conspiracy to [commit] unjust enrichment. Accordingly, the court will analyze the plaintiff's conspiracy claims, collectively, as a cause of action for civil conspiracy.  "It is well-settled in South Carolina that the tort of civil conspiracy contains three elements: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; (3) causing plaintiff special damage." *Cowburn v. Leventis*, 619 S.E.2d 437, 453 (S.C. Ct. App. 2005) (citation omitted). "In a civil conspiracy claim, one must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009) (citation omitted). "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct. . . . [and] must be specifically alleged in the complaint to avoid surprise to the other party." *Id*. (citation omitted).

In his causes of action relating to civil conspiracy, the plaintiff provides the following conclusory assertions:

> Each of the defendants separately and all of the defendants collectively are liable for all of the damages caused by their own respective conspiratorial act while passing plaintiff to the next link in the chain type fraudulent organized scheme . . . [and] caused by their own respective conspiratorial act while they presented plaintiff with a fraudulent settlement and physician statement, passing plaintiff to the next link in the chain while committing fraudulent organized crime . . . [E]ither by pocketing or saving money every single one of the defendants unfairly tried to enrich themselves out of their fraudulent scheme.

(Doc. 1 at 14-15).

As set forth above, the plaintiff alleges that Mr. Bruner, along with Mr. Shull and Mr. Philpot, pressured him to take an unfair settlement of his workers' compensation claim, and Mr. Bruner "intentionally for several weeks" withheld the plaintiff's last two paychecks and refused to pay for the plaintiff's medications (*id.* at 9-10).  The plaintiff alleges that Mr. Philpot's communication with the co-defendants during his representation of plaintiff was tantamount to conspiring with them to keep the plaintiff from receiving funds, and the fact that Mr. Philpot referred to Mr. Shull as a friend in emails "reveals conspiracy" (*id.* at 9-11).

Clearly, the litigation of workers' compensation cases requires communication between insurance representatives, plaintiffs' lawyers, defense lawyers, and medical providers. As argued by the defendants, the actions taken by the defendants are undertaken by thousands of persons each day, form the core of our adversarial system, and do not serve as a basis for a claim for civil conspiracy.  The plaintiff does not plead any additional acts undertaken by any of the defendants in furtherance of the conspiracy. Furthermore, he fails to plead any special damages incurred as a result of the alleged conspiracy.  Therefore, even liberally construing the plaintiff's complaint, he fails to allege any facts that would support a cause of action for civil conspiracy, and these claims should be dismissed.

### b. Breach of Fiduciary Duty/ Negligence

The plaintiff alleges a cause of action for breach of fiduciary duty against the State Auto defendants, the Philpot defendants, and the Steadman Hawkins defendants[2] (doc. 1 at 15).  The plaintiff also alleges a similar cause of action for negligence against the State Auto defendants and the Philpot defendants (*id.* at 16).

---

[2]Because the allegations against the Steadman Hawkins defendants sound in medical malpractice, they will be analyzed below with regard to that cause of action.

To prove negligence, a plaintiff must prove the following elements: (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty by the defendant, and (3) damages proximately resulting from the breach of duty. *Hurst v. E. Coast Hockey League, Inc.*, 637 S.E.2d 560, 562 (S.C. 2006). To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant. *RFT Mgt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012).

The plaintiff alleges that Mr. Bruner and Mr. Restrepo "have a duty of making sure an injured worker's medical bills are paid as well as medical attention is available" (doc. 1 at 15).  An insurer's duties under a contract do not extend to those persons who are not a party to the contract. *See Carolina Bank and Trust Co. v. St. Paul Fire and Marine Co.*, 310 S.E.2d 163, 165-66 (S.C. Ct. App. 1983) ("duty of good faith in the performance of obligations based on or arising under the contract does not extend to a person who is not a party to the insurance contract"). The plaintiff is not a party to the insurance contract issued by State Auto and, thus, the State Auto defendants do not have any duties to him under that contract. As such, the plaintiff's breach of fiduciary duty and negligence claims should be dismissed.

The plaintiff alleges that while acting as his attorney, Mr. Philpot both breached fiduciary duties owed to him and was negligent in handling his claim. With regard to fiduciary duties, the plaintiff alleges that Mr. Philpot's "duty is to look up to his client's interest versus defendants'. Attorney Philpot actions were vice versa" (doc. 1 at 15). With regard to his negligence claim, the plaintiff alleges Mr. Philpot was negligent in his handling of the workers' compensation claim by failing to respond to requests made by the plaintiff, by not making sure the plaintiff received appropriate medical attention and medication, by failing to prevent defendant Dr. Elliot from making a "fraudulent physician statement," by

14

failing to keep defendant State Auto from taking away his benefits, by failing to force his employer to pay him in a timely fashion, and by filing an incomplete withdrawal form with the Commission (*id.* at 16).

The South Carolina Supreme Court has ruled that a breach of fiduciary duty claim arising out of an attorney's representation of his client is properly merged into a negligent professional representation claim. *RFT Management v. Tinsley & Adams, LLP*, 732 S.E.2d 166, 173 (S.C. 2012) ( finding that as the plaintiff's claim for breach of fiduciary duty arose out of the duty inherent in the attorney-client relationship and out of the same factual allegations, the plaintiff's claim for legal malpractice necessarily encompassed a breach of the fiduciary duty an attorney has to his or her client). Accordingly, the claims against Mr. Philpot will be analyzed together.

South Carolina has enacted a statute governing claims made against certain categories of professionals. S.C. Code Ann. § 15-36-100. Attorneys are an included profession for the purposes of this section. *Id.* § 15-36-100(G)(2). This code section requires a plaintiff to file with the complaint a contemporaneous affidavit from an expert specifying negligent acts or omissions by the professional in performing his professional responsibilities. *Id.* § 15-36-100(B). The statute further states, in pertinent part:

> If an affidavit is not filed within the period specified in this subsection or as extended by the trial court and the defendant against whom an affidavit should have been filed alleges, by motion to dismiss filed contemporaneously with its initial responsive pleading that the plaintiff has failed to file the requisite affidavit, the complaint is subject to dismissal for failure to state a claim.

*Id.* § 15-36-100(C)(1). The plaintiff did not file the required contemporaneous expert affidavit.

Based upon the foregoing, these causes of action should be dismissed for failure to state a claim.

### c. Intentional Infliction of Emotional Distress

The plaintiff alleges this cause of action against all of the defendants (doc. 1 at 15).The elements of the tort of intentional infliction of emotional distress, or outrage, are: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or knew that distress would probably result from his conduct; (2) the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Gattison v. S. Carolina State Coll.*, 456 S.E.2d 414, 416 (S.C. Ct. App. 1995).

The plaintiff alleges as follows in this claim:

> As result of defendants' fraudulent scheme plaintiff suffered Emotional Distress, every day's life is disrupted. Distress constantly was there while defendants reversed to comply with some of the settlement's clausules [sic] previously agreed upon. Economic sanctions imposed by defendants brought psychological discomfort to plaintiff's mental health, every day's distress, no enjoyable life. To this date, every day's life is neither mentally nor physically enjoyable to plaintiff Zulveta. Emotional distress is constantly there.

(Doc. 1 at 15).

Viewing the factual allegations in a light most favorable to the plaintiff, he has alleged the following conduct by the defendants: (1) the State Auto defendants and Mr. Philpot failed to agree to an offer of settlement sufficient to satisfy the plaintiff and pressured him to take an unfair settlement; (2) Mr. Philpot was not responsive to certain requests by the plaintiff, he acknowledged Mr. Shull as a friend in emails, and he filed improper withdrawal paperwork with the Commission after the plaintiff had terminated him as his attorney; (3) Dr. Elliott ignored his symptoms and at least initially refused to prescribe him any medication or document any work restriction for him and signed a physician statement form indicating that the plaintiff had sustained a 0% loss of use to lower extremity

and was fit to return to work without restriction; and (4) Mr. Case refused to let him work on light duty work restriction and subsequently laid him off.  The conduct described by the plaintiff cannot be considered the intentional or reckless conduct that is so extreme and outrageous that it exceeds all bounds of decency and was furthermore atrocious and utterly intolerable in a civilized community. Based upon the foregoing, the plaintiff has failed to state a claim for intentional infliction of emotional distress that is facially plausible, and, therefore, the claim should be dismissed.  *Iqbal*, 556 U.S. at 678-79.

### d. Medical Malpractice

The plaintiff alleges a cause of action for medical malpractice against the Case defendants and the Steadman Hawkins defendants (doc. 1 at 33-34). The plaintiff alleges as follows in this cause of action:

> Dr. Curtis Elliot failed to provide plaintiff Zulveta with proper medical treatment including among others required Pain management sessions on this type of case.  Dr. Elliot beheld [sic] relevant medical information for the purpose of minimize in front plaintiff's eyes the nature of injury.  Dr. Elliot issued a fraudulent Physician Statement while he was prepared to contradict himself on further fraudulent Physician statement.
>
> Employer Tim Case is liable for his medical provider's wrongdoings.

(Doc. 1 at 16).

With regard to defendant Steadman Hawkins, as set forth above, the plaintiff alleges only that he went to Steadman Hawkins following his knee injury on November 11, 2014, and an appointment was scheduled for the following day.  The plaintiff alleges that the scheduled appointment was subsequently cancelled, but based upon his allegations, it was cancelled due to the actions of State Auto, not Steadman Hawkins (*id.* at 4). Clearly this is an insufficient factual basis for any cause of action against this defendant.

17

The plaintiff fails to provide any factual basis for the conclusory statement that Mr. Case is liable for Dr. Elliott's alleged malpractice, and such is clearly insufficient to state a claim for medical malpractice against Mr. Case.

As for Dr. Elliott, the plaintiff's claim falls within the definition of "medical malpractice" found in the South Carolina Code:

> "Medical malpractice"  means doing that which the reasonably prudent health care provider or health care institution would not do or not doing that which the reasonably prudent health care provider or health care institution would do in the same or similar circumstances.

S.C. Code Ann. § 15-79-110(6). Accordingly, the plaintiff must comply with the requirements of S.C. Code Ann. § 15-79-125(A), which requires a plaintiff to file a notice of intent to file suit ("NOI") and an affidavit of an expert witness prior to filing or initiating a civil action alleging medical malpractice. *See Jelks v. United States*, C.A. No. 3:12-3451-JFA-PJG, 2014 WL 1096301, at * 3 (D.S.C. Mar. 19,  2014) (noting that before filing or initiating a claim for medical malpractice in South Carolina, a plaintiff must contemporaneously file an NOI and expert affidavit identifying at least one negligent act or omission claimed to exist, and dismissing case because expert report failed to identify at least one negligent act or omission); *Millmine v. Harris*, C.A. No. 3:10-1595-CMC, 2011 WL 317643 (D.S.C. Jan. 31, 2011) (holding that pre-suit notice and expert affidavit requirements in S.C. Code § 15-79-125 are the substantive law in South Carolina and thus applicable to cases filed in federal court under diversity jurisdiction). The section also requires the parties to participate in mediation within ninety and no later than one hundred twenty days from the service of the NOI. S.C. Code Ann. § 15-79-125(C). As the plaintiff has not met any of those requirements, this cause of action should be dismissed.

Based upon the foregoing, the plaintiff's medical malpractice cause of action should be dismissed.

### e. Retaliation

Lastly, the plaintiff alleges a cause of action for retaliation against the Case defendants (doc. 1 at 16-17). Specifically, he alleges: "Plaintiff Zulveta was victim of retaliatory action by employer Tim Case who also convenience [sic] is to reduce or eliminate Plaintiff Zulveta's Workers Compensation's benefits. Discovery will prove allegation" (*id.* at 17). The Case defendants have not filed a motion to dismiss, and, as this cause of action is alleged solely against the Case defendants,[3] the undersigned recommends that the case proceed at this time solely on this cause of action.

***Plaintiff's Motion to Amend***

On October 19, 2015, the plaintiff filed a motion to amend his complaint (doc. 67)[4], apparently in response to the Steadman Hawkins defendants' motion to dismiss. In their motion to dismiss, the Steadman Hawkins defendants state that Steadman Hawkins Clinic of the Carolinas is not an independent entity capable of being sued, and it is merely a trade name used by Greenville Health System ("GHS") for one of its practice groups. Therefore, they argue that, to the extent the plaintiff has made allegations against Steadman Hawkins, the proper defendant is GHS. As one of its arguments in support of dismissal (doc. 22-1 at 3), the Steadman Hawkins defendants argue that GHS is a governmental entity and healthcare facility within the meaning of the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq*. and it and its agents and employees are, therefore, entitled to all rights, privileges, defenses, limitations, and immunities afforded by the Act and afforded by the doctrine of sovereign immunity, as is retained by the Act. *See*

---

[3]While the Case defendants have not filed a motion to dismiss, the undersigned recommends that the conspiracy, intentional infliction of emotional distress, and medical malpractice claims against the Case defendants be dismissed as the claims fail for the reasons argued by their co-defendants, as discussed above.

[4]The undersigned would ordinarily rule on a motion to amend as it is a nondispositive motion. However, as the motion to amend was apparently filed in response to the Steadman Hawkins defendants' motion to dismiss, the motion has been included in the Report and Recommendation.

*Murphy v. Richland Mem. Hosp.*, 455 S.E.2d 688 (S.C. 1995) (citing *Benton v Roger C Peace*, 443 S.E.2d 537 (S.C. 1994)).

As discussed above, the plaintiff's causes of action, with the exception of the retaliation claim, should be dismissed for failure to state a claim.  As sovereign immunity is not a basis for the undersigned's recommendation, the plaintiff's motion to amend should be denied as futile as it fails to cure any of the deficiencies discussed above and because the proposed amendment does not alter this court's recommendation on the defendants' motions to dismiss.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendants' motions to dismiss (docs. 12, 17, 22, 28) should be granted and defendants State Auto, Philpot Law Firm, Steadman Hawkins, Willson Jones, Mr. Restrepo, Mr. Brenner, Mr. Philpot, Dr. Elliot, and Mr. Shull should be dismissed from the case.  The case should proceed at this time solely on the retaliation cause of action alleged against defendants TC Unlimited and Mr. Case. Moreover, the plaintiff's motion to amend his complaint (doc. 67) should be denied as futile.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

November 30, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).